

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

TYREE ROBERT ROSS,

    Petitioner,

v.

    Civil No. 04-60225-AA
    HONORABLE MARIANNE O. BATTANI
    UNITED STATES DISTRICT JUDGE

TERRY SHERMAN,

    Respondent,

_____/

## OPINION AND ORDER OF SUMMARY DISMISSAL

Tyree Robert Ross, ("petitioner"), presently confined at the Ojibway Correctional Facility in Marenisco, Michigan, seeks the issuance of a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In his application, filed *pro se*, petitioner challenges his conviction on one count of first-degree home invasion, M.C.L.A. 750.110a(2); M.S.A. 28.305(a)(2), and being a second felony habitual offender, M.C.L.A. 769.10; M.S.A. 20.1082. Respondent has filed a motion for summary judgment, contending that the petition was not timely filed in accordance with the statute of limitations contained in 28 U.S.C. § 2244 (d)(1). Petitioner has filed a response to the motion for summary judgment. For the reasons stated below, petitioner's application for a writ of habeas corpus is summarily dismissed.

### I. Background

Petitioner was originally charged with first-degree home invasion, minor in possession, first-degree, breaking and entering a motor vehicle, receiving and

concealing stolen property over the value of $ 100.00, and being a third felony habitual offender. Pursuant to a plea bargain, petitioner pleaded guilty to the first-degree home invasion charge and to a reduced charge of being a second felony habitual offender charge, in exchange for dismissal of the remaining charges against him. On March 6, 1998, petitioner was sentenced to five to twenty years in prison.

By his own admission, petitioner never filed a direct appeal from his conviction. [1] Petitioner, however, filed a post-conviction motion for relief from judgment with the Isabella County Circuit Court on November 8, 2001. The motion for relief from judgment was denied by the trial court on August 1, 2002. By his own admission, petitioner never appealed the denial of his post-conviction motion to the Michigan appellate courts. The instant petition for writ of habeas corpus was filed on September 10, 2004. [2]

## II. Discussion

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Sanders v. Freeman,* 221 F. 3d 846, 851 (6th Cir.

---

[1] See also Affidavit of Sandra Schultz Mengel, Chief Clerk of the Michigan Court of Appeals, dated April 8, 2005 [This Court's Docket Entry # 14], which indicated that petitioner never appealed his conviction.

[2] Under the prison mailbox rule, this Court will assume that petitioner actually filed his habeas petition on September 10, 2004, the date that it was signed and dated. See *Neal v. Bock,* 137 F. Supp. 2d 879, 882, n. 1 (E.D. Mich. 2001).

2000)(quoting Fed. R. Civ. P. 56(c). To defeat a motion for summary judgment, the non-moving party must set forth specific facts sufficient to show that a reasonable factfinder could return a verdict in his or her favor. *Id.* The summary judgment rule applies to habeas proceedings. *Redmond v. Jackson,* 295 F. Supp. 2d 767, 770 (E.D. Mich. 2003).

Under the Antiterrorism and Effective Death Penalty Act (AEDPA), a one (1) year statute of limitations shall apply to an application for writ of habeas corpus by a person in custody pursuant to a judgment of a state court. The one year statute of limitation shall run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

A petition for writ of habeas corpus must be dismissed where it has not been filed within the one year statute of limitations. *See Holloway v. Jones,* 166 F. Supp. 2d 1185, 1187 (E.D. Mich. 2001).

In the present case, petitioner was sentenced on March 6, 1998. Petitioner

3

never filed a direct appeal from his conviction. For purposes of commencing the one year limitations period pursuant to § 2244(d)(1)(A), a state-court judgment becomes "final" when direct review by the state court ends or when the time to seek direct review expires, whichever comes later. See *Wilberger v. Carter,* 35 Fed. Appx. 111, 114 (6th Cir. 2002). Because petitioner never appealed his conviction, the one year time period for filing his habeas petition would begin to run for petitioner after the expiration of the time limit that petitioner had under state law to file the direct appeal from his conviction. See *McAfee v. Angelone,* 87 F. Supp. 2d 605, 606 (W.D. Va. 2000). Under M.C.R. 7.205(F)(3), petitioner had twelve months after his sentence to file a delayed application for leave to appeal. The one year statute of limitations therefore commenced in his case on March 6, 1999, after the one year period for petitioner to file an application for leave to appeal with the Michigan Court of Appeals expired. Petitioner had until March 6, 2000 to file his petition for writ of habeas corpus with this Court unless the one year period was somehow tolled.

In the present case, petitioner filed a post-conviction motion for relief from judgment with the trial court on November 8, 2001, after the one year limitation period had already expired. 28 U.S.C. § 2244 (d)(2) expressly provides that the time during which a properly filed application for state post-conviction relief or other collateral review is pending shall not be counted towards the period of limitations contained in the statute. *Fugate v. Booker,* 321 F. Supp. 2d 857, 860 (E.D. Mich. 2004). However, the filing of the post-conviction motion for relief from judgment by

4

petitioner did not delay the date on which his conviction became final, nor did the limitations period begin to run anew when the state court concluded its review of petitioner's post-conviction motion. *Id.* Simply put, a state court post-conviction motion that is filed following the expiration of the limitations period for filing a petition for a writ of habeas corpus in the federal court cannot toll that period because there is no period remaining to be tolled. *Fugate,* 321 F. Supp. 2d at 860; *Redmond v. Jackson*, 295 F. Supp. 2d at 770. If the one year limitations period has already expired, as was the case here, the filing of a motion for state post-conviction relief will not add new time to the limitations period. *Redmond*, 295 F. Supp. 2d at 770. The instant petition is therefore untimely.

The one year limitations period under the AEDPA is considered a statute of limitations which is subject to equitable tolling, and is not a jurisdictional prerequisite which would bar review by the federal courts if not met. *Dunlap v. United States*, 250 F. 3d 1001, 1004 (6th Cir. 2001). The doctrine of equitable tolling should be used "sparingly," *Dunlap,* 250 F. 3d at 1008-09, and "[a]bsent a satisfactory explanation for his failure to timely file his habeas petition," a petitioner would fail to exercise due diligence in pursuing his claim, and thus would not be entitled to equitable tolling of the limitations period. *Id.* at p. 1010. A habeas petitioner bears the burden of establishing that he or she is entitled to the equitable tolling of the one year limitations period. *Jurado v. Burt,* 337 F. 3d 638, 642 (6th Cir. 2003).

In his response to the motion for summary judgment, petitioner claims that he

attempted to file an application for leave to appeal of his conviction, but was prevented from doing so "due to the corrupt nature of the County" in which he was convicted. Petitioner claims that he was given "some papers" at sentencing and told to fill them out and return them to the judge, but that when he attempted to do so, the judge would not take both of the documents, instead taking only one of the documents and advising petitioner to give the other document to the deputies at the county jail. Petitioner claims that he later learned that he had either improperly filed these legal papers or that one of the deputies had thrown them away. Petitioner does not specifically identify these forms, but the Court assumes that petitioner is referring to forms to request an appeal and/or the appointment of appellate counsel. Petitioner further argues that the trial court's failure to accept these forms prevented him from being able to obtain his transcripts and police reports until May of 2001, further hampering his ability to perfect an appeal or to seek post-conviction relief.

The main problem with petitioner's allegation that the trial court refused to accept his appellate court papers is that there is no support in the record for petitioner's contention. The sentencing transcript indicates that the trial court informed petitioner of his right to file an application for leave to appeal and his right to request the appointment of appellate counsel if indigent. The trial court further advised petitioner that any request for the appointment of counsel must be made within forty two days of his sentence. The trial court judge indicated that he had given Mr. Shirley, petitioner's trial counsel, the request for counsel form which had

to be completed and returned within forty two days if petitioner desired court appointed counsel. (Tr. 03/06/1998, p. 16). There is nothing in the transcript about the trial court declining to accept petitioner's appellate court documents. A court reporter's transcript is presumed to be accurate or correct. *Abatino v. United States*, 750 F. 2d 1442, 1445 (9th Cir.1985). Petitioner has not offered any proof to rebut this presumption with this Court. Besides his own speculations, petitioner does not present any reason why this Court should suspect the transcript to be inaccurate. *See Norris v. Schotten*, 146 F. 3d 314, 333 (6th Cir. 1998).

Moreover, petitioner has failed to offer any explanation as to why the trial court's alleged failure to accept his appellate documents and to appoint appellate counsel prevented him from filing his federal habeas petition until September of 2004. In *Miller v. Cason,* 49 Fed. Appx. 495, 497 (6th Cir. 2002), the Sixth Circuit held that the alleged actions by the state trial court in failing to give petitioner notice of his appeal rights at sentencing, by not timely appointing counsel to perfect a belated appeal, and by delaying the preparation of the trial transcripts for an unspecified amount of time did not toll the limitations period. Although acknowledging that these actions may have interfered with the petitioner's direct appeals in the state courts in the early 1990's, the Sixth Circuit held that petitioner was not entitled to equitable tolling because he failed to explain why these actions

prevented him from filing his habeas petition until 2001. [3]

In order to be eligible for equitable tolling, a habeas petitioner is required to show "a causal relationship between the extraordinary circumstances in which the claim for equitable tolling rests and the lateness of the filing." *Valverde v. Stinson*, 224 F. 3d 129, 134 (2nd Cir. 2000). If a habeas petitioner has not exercised reasonable diligence in attempting to file his or her petition after the extraordinary circumstances began, the "link of causation" between the extraordinary circumstances and the failure to file is broken, and the extraordinary circumstances would therefore not prevent a timely filing as required for equitable tolling of the statute of limitations. *Id.* In addition, as the Ninth Circuit has indicated:

> [I]t will normally be much more difficult for a prisoner to demonstrate causation when he encounters 'extraordinary circumstances' in the beginning or middle of the limitations period that than when he encounters them at the end of [the] limitations period."

*Allen v. Lewis*, 255 F. 3d 798, 800 (9th Cir. 2001).

In *Allen v. Lewis*, 255 F. 3d at 800, the Ninth Circuit held that the AEDPA limitations period was not equitably tolled for the twenty seven days during which petitioner was transferred between state prisons and lost access to all of his property, including legal and non-legal materials necessary to the preparation of his

---

[3] While it is true that unpublished opinions carry no precedential weight, they often carry "persuasive weight." *United States v. Webber*, 208 F. 3d 545, 551, n. 3 (6th Cir. 2000). Moreover, as one court has commented: "[T]he fact that West Group is now digesting and publishing, in its 'Federal Appendix' series, opinions not selected by the Court of Appeals for formal publication, certainly puts a new twist on just what constitutes an 'unpublished' opinion." *See In Re Park*, 275 B.R. 253, 258, n. 9 (Bankr. E.D. Va. 2002).

8

habeas petition, where the transfer began a mere one month into limitations period, leaving petitioner with the better part of the limitations period in which he could have filed his federal petition uninhibited by the prison transfer.

In the present case, petitioner has failed to show any causal link between the trial court's alleged failure to accept his appellate court papers, to appoint appellate counsel, or the preparation of the transcripts and the untimely filing of his petition. Petitioner had obtained the transcripts and police reports in this case by May of 2001, yet waited until November of 2001 to file his post-conviction motion with the trial court. More importantly, after the trial court denied petitioner's post-conviction motion in August of 2002, petitioner never appealed the denial of this motion and waited until September of 2004 to file his petition for writ of habeas corpus.

The only excuse offered by petitioner for his failure to appeal his post-conviction motion is that he was paroled on this conviction in November of 2002 and was arrested for a new crime by Isabella County in June of 2003. Petitioner contends that when he returned to prison on this new conviction, he had to focus on challenging this new conviction, which prevented him from perfecting his appeal from the denial of his 6.500 motion in this case. Petitioner does not specify what crime he was convicted of, but the Michigan Department of Corrections' Offender Tracking Information System (OTIS), which this Court is permitted to take judicial notice of, See Ward v. Wolfenbarger, 323 F. Supp. 2d 818, 821, n. 3 (E.D. Mich. 2004), indicates that petitioner was arrested on May 18, 2003, for stealing or retaining a

9

financial transaction device without consent, was convicted of this offense at a bench trial, and was sentenced on December 3, 2003 to one year, three months to five years in prison. At some point, petitioner was re-sentenced to probation on this offense, and was discharged from this sentence on January 24, 2005.

Petitioner offers no explanation why he could not file an appeal from the denial of his post-conviction motion in the almost ten months that lapsed between the denial of his post-conviction motion on August 1, 2002 and his arrest on this new conviction on May 18, 2003. In addition, the fact that petitioner may have had to appeal more than one conviction at the same time would not entitle him to equitable tolling. Many habeas petitioners often have to challenge more than one criminal judgment at the same time. The issues raised by petitioner in this case were not complex. Petitioner has also not shown that the issues that were involved in his other criminal case were complex or lengthy. The purported difficulty of legal issues involved in a prisoner's *pro se* habeas petition is an inadequate ground to equitably toll the habeas limitations period. See *Lovato v. Suthers,* 42 Fed. Appx. 400, 402 (10th Cir. 2002). Finally, the fact that petitioner was able to file his federal habeas petition while this alleged impediment still existed shows that he was not prevented by having to appeal a separate conviction from timely filing his habeas petition in this case. See *Lloyd v. Miller,* 152 F. Supp. 2d 1119, 1121-22 (N.D. Ind. 2001).

Petitioner also claims that the limitations period should be tolled because he is actually innocent of crimes for which he was convicted. Petitioner first claims that

10

he is actually innocent because the homeowner whose house was broken into described the perpetrator as being a white male, whereas petitioner is African-American. Alternatively, petitioner claims that he is innocent of these charges because his intoxication on the night of the home invasion prevented him from forming the specific intent to commit the crime. Finally, petitioner claims that he is innocent of first-degree home invasion, because the value of the wallet taken from the home was under $100.00, making the underlying larceny a misdemeanor rather than a felony. Petitioner contends that under Michigan law at the time of his crime, a person had to commit felony larceny in order to be convicted of first-degree home invasion.

The one year statute of limitations may be equitably tolled based upon a credible showing of actual innocence under the standard enunciated in *Schup v. Delo,* 513 U.S. 298 (1995). *See Souter v. Jones,* 395 F. 3d 577, 599-600 (6th Cir. 2005). To establish actual innocence, "a petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* at 590 (quoting *Schlup* 513 U.S. at 327). For an actual innocence exception to be credible, such a claim requires a habeas petitioner to support his or her allegations of constitutional error "with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial." *Schlup,* 513 U.S. at 324; *Souter,* 395 F. 3d at 590. The Sixth Circuit further noted that "actual

11

innocence means factual innocence, not mere legal insufficiency." *Souter,* 395 F. 3d at 590 (quoting *Bousley v. United States,* 523 U.S. 614, 623 (1998)). Finally, the Sixth Circuit in *Souter* recognized the Supreme Court's admonition that the actual innocence exception should "remain rare" and "only be applied in the 'extraordinary case.'" *Id.* (quoting *Schlup,* 513 U.S. at 321).

Petitioner is not entitled to have the limitations period tolled because other than his unsupported, self-serving statements, petitioner has offered no affidavits or other documentary evidence in support of his claims of actual innocence. *See Herbert v. Jones,* 351 F. Supp. 2d 674, 678-79 (E.D. Mich. 2005). Petitioner's conclusory claim of actual innocence, especially in light of his plea of guilty in open court, is insufficient to entitle him to equitable tolling of the habeas statute of limitations. *See Loving v. Mahaffey,* 27 Fed. Appx. 925, 926 (10th Cir. 2001). [4]

Morever, although petitioner contends that he is innocent of the home invasion charge because the homeowner gave an erroneous identification of the perpetrator, petitioner has made no allegation that he was factually innocent of the other charges that were dropped as part of the plea bargain. Because petitioner has not shown that he is actually innocent of any of the other felony charges that were dismissed by the prosecution in the course of plea bargaining, he cannot make a claim of

---

[4] At least one other judge in this district has suggested that a plea of guilty forecloses a claim of actual innocence so as to excuse a procedural default, although the judge acknowledged that no appellate court case had explicitly adopted such a rule. *See Alvarez v. Straub,* 64 F. Supp. 2d 686, 699-700 & n. 6 (E.D. Mich. 1999).

12

actual innocence that would toll the limitations period. See *Kelly v. Duncan,* 16 Fed. Appx. 679, 680 (9th Cir. 2001).

Petitioner is also not entitled to invoke the actual innocence exception because he has made admissions in his petition which are inconsistent with his factual innocence claim. See *Appleby v. Butler,* 2004 WL 502310, * 3 (N.D. Cal. March 9, 2004). After claiming that he was misidentified as the perpetrator, petitioner argues in the alternative that he is not guilty of these offenses because his intoxication on the night in question prevented him from forming the intent to commit the home invasion. Petitioner further contends that under Michigan law, he could not be found guilty of first-degree home invasion, because the wallet that he was found in possession of had a value of less than one hundred dollars, making the underlying larceny only a misdemeanor. Both of these assertions, however, contradict his claim that he did not commit the home invasion.

Petitioner's claim that he was intoxicated at the time of the crime would not invoke the actual innocence exception, because his alleged intoxication would establish only his legal, as opposed to factual, innocence. See *e.g. Beavers v. Saffle,* 216 F. 3d 918, 923 (10th Cir. 2000).

Petitioner's contention that he is innocent of first-degree home invasion because the underlying larceny was only a misdemeanor is also without merit. M.C.L.A. 750.110a(2), Michigan's first-degree home invasion statute, indicates that a person is guilty of first-degree home invasion if they break and enter a dwelling

"with the intent to commit a felony, larceny, or assault". Michigan's first-degree home invasion statute includes all of the elements of the burglary of a dwelling, but also requires that the defendant be armed with a dangerous weapon and/or that the dwelling be occupied. See *Johnson v. Warren,* 344 F. Supp. 2d 1081, 1093 (E.D. Mich. 2004)(citing *United States v. Garcia-Serrano,* 107 Fed. Appx. 495, 496-97 (6th Cir. 2004). In *People v. Sands,* 261 Mich. App. 158, 163; 680 N.W. 2d 500 (2004); *lv. den.* 471 Mich. 873; 685 N.W. 2d 671 (2004), the Michigan Court of Appeals ruled that both felony and misdemeanor assaults could be used as underlying crimes to charge a person with first-degree home invasion. Significantly, the Michigan Court of Appeals noted: "[F]urther, because felonies are specifically listed as underlying crimes for first-degree home invasion, it would be redundant to list assault and larceny separately if subsection 110a(2) was referring to only felony assaults and larcenies." *Id.* Because the plain language of the first-degree home invasion statute lists larcenies separately from felonies, it is clear that the statute does not apply only to felony larceny offenses. Therefore, the fact that petitioner may have only committed a misdemeanor larceny would not make him actually innocent of the crime of first-degree home invasion.

Petitioner has failed to establish his actual innocence to the crime charged, for purposes of tolling the one year limitations period, because he has presented no new, reliable evidence to establish that he was actually innocent of the crimes charged. See *Holloway v. Jones,* 166 F. Supp. 2d at 1191. Accordingly, summary

dismissal of the petition is appropriate. *Id.*

## III. ORDER

Accordingly, the Court **DISMISSES WITH PREJUDICE** the petition for writ of habeas corpus pursuant to 28 U.S.C. § 2244(d)(1).

HON. MARIANNE O. BATTANI
UNITED STATES DISTRICT COURT

DATED: **MAY 26 2005**